PETER L. SIMON (Bar No. 178393)
STEVEN J. BLEASDELL (Bar No. 191522)
BEYERS | COSTIN
200 Fourth Street, Suite 400
Post Office Box 878
Santa Rosa, California  95402-0878
Telephone: (707) 547-2000
Facsimile:  (707) 526-2746

Attorneys for Defendant
La Esplanada, Unit 1 Owners' Association

UNITED STATES DISTRICT COURT

NORTHER DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO.  CV 11-05641 SBA |
| Plaintiff, | **DEFENDANT'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP RULE 12(b)(7) AND TO DISMISS PLAINTIFF'S SECOND CLAIM FOR RELIEF PURSUANT TO FRCP RULE 12(b)(6) and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| **CITY OF SANTA ROSA, and LA ESPLANADA UNIT 1 OWNERS' ASSOCIATION,** | |
| Defendants. | **DATE:** April 24, 2012<br>**TIME:** 1:00 p.m.<br>**COURTROOM:** 1<br>**JUDGE:** Saundra Brown Armstrong |

0

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on April 24, 2012 at 1:00 p.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at 1301 Clay Street, 4th Floor, Oakland, California, Courtroom 1, Defendant LA ESPLANADA UNIT 1 OWNERS' ASSOCIATION ("La Esplanada") will, and hereby does, respectfully move the Court to dismiss Plaintiff's entire complaint pursuant to Fed. R. Civ. P. 12(b)(7) on the grounds that it has failed to join an indispensable party under Rule 19 and to dismiss Plaintiff's "Second Claim for Relief" pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff has failed to allege necessary facts to entitle it to relief under the relevant legal standards.  This motion is based on this Notice, the Memorandum of Points and Authorities, the pleadings on file in this Action, the Request for Judicial Notice submitted with this motion and on such further evidence and argument as the Court may permit.


DATED:  January 19, 2012                     BEYERS ⎪ COSTIN


                                          */s/ Peter L. Simon*
                              By: _____
                                          PETER L. SIMON
                                          Attorneys for Defendant

1

## SUMMARY OF THE ARGUMENT

This case concerns an allegation of housing discrimination against the City of Santa Rosa and the La Esplanada Unit 1 Owners' Association.  The United States brought the action pursuant to the Fair Housing Act[1] "on behalf of Vladimir Abramov and La Promenade Villas, LLC pursuant to 42 U.S.C. §3612(o)" and "42 U.S.C. § 3614(a)."  (Compl., p. 1, ¶ 1.)[2]

Defendant La Esplanada Unit 1 Owners' Association (hereinafter "HOA") respectfully moves this court to dismiss plaintiff's entire action pursuant to Federal Rule of Civil Procedure § 12(b)(7), on the grounds that plaintiff has failed to join Vladimir Abramov (hereinafter "Abramov") and La Promenade Villas, LLC (hereinafter "LPV") as indispensable parties under Rule 19.  Not only were Abramov and La Promenade the developers of Phase II (Complaint, Paragraph 22), they are the owners of all of the 84 units in Phase II and members of the HOA.  Pursuant to the "Declaration of Annexation" recorded by LPV, "through Mr. Abramov on January 31, 2007" (Complaint, Paragraph 21),  LPV and/or Abramov are "owners" and each "[o]wner of Condominium Unit . . . will receive . . . membership in the La Esplanada Unit 1 Owners' Association."[3]  (Not only are they members, they are majority owners holding title to 84 of the 120 units).  Moreover, in January of 2007, upon the application by LPV, the California Department of Real Estate issued "Final Subdivision Public Report Condominium" (hereinafter the "DRE Final Report").   The DRE Final Report expressly provides that Phase II of the project was "Senior Housing" intended to "provide housing for Senior Citizens (as defined in the recorded declaration) and intended to qualify as a Senior Citizen Housing Development within the meaning of Civil Code Section 51.3(c)(4)" and pursuant to the Federal Fair Housing Act and the Housing for Older Persons Act of 1995.[4]

---

[1] Title 8 of the Civil Rights Act of 1968, as amended (FHA), 42 U.S.C. §§ 3601 et seq.
[2] All references to "Compl." refer to Plaintiff's Complaint filed on November 21, 2011 against the City of Santa Rosa and La Esplanada Unit 1 Owners' Association.
[3] A copy of each Declaration of Annexation are attached to the Request for Judicial Notice served and filed herewith, as Exhibits A - E.
[4] A copy of the "Final Subdivision Public Report Condominium" issued by the Department of Real Estate of the State of California is attached to the Request for Judicial Notice served and filed herewith, as Exhibit F.

2

1    It was Abramov and LPV who violated the Federal Fair Housing Law and the CC&R's when

2    they began renting to tenants under the age of 55.  As stated by Abramov in the "Final Investigative

3    Report" issued by HUD[5], he "knew from the time he purchased the property that it was designated as

4    senior housing" and he "originally advertised the units for persons 55 years of age and older."  However,

5    because he was unable to sell the units to seniors, he began renting the units to families of all ages.

6    In bringing the action on behalf of Abramov and LPV, the United States is not only assisting

7    Abramov and LPV in circumventing the "Senior Housing" status of the units that Abramov developed

8    so that Abramov and LPV can maximize a return on their investment, it is bringing an action on behalf

9    of the very party it is suing as Abramov and LPV are members of the HOA.  This is untenable.  The

10   United States needs to either add Abramov and LPV as parties to this litigation or dismiss its action.

11   Defendant La Esplanada also moves to dismiss plaintiff's "Second Claim For Relief" pursuant to

12   Federal Rule of Civil Procedure § 12(b)(6) on the grounds that it fails to state a cause of action.

13   Plaintiff's "Second Claim For Relief" alleges "pattern or practice" housing discrimination.  Plaintiff's

14   complaint fails to allege facts sufficient to support plaintiff's "pattern or practice" allegation.  Plaintiff

15   only alleges a single act by La Esplanada that "[o]n or about December 11, 2008, the HOA sent a

16   "notice of violation of CC&Rs ("notice") to LPV's representative demanding that LPV comply with the

17   CC&Rs … ."  (Compl., ¶24, ll. 9-10.)  A "pattern or practice" must "encompass more than an isolated or

18   accidental or peculiar event."[6]  A single incident of discrimination, standing alone, does not justify a

19   finding of "pattern or practice."[7]

20   Plaintiff's Second Claim For Relief is also barred by the statute of limitations contained in 42

21   U.S.C. § 3614(b)(1)(B).  As provided therein, "[a] civil action under this paragraph may be commenced

22   not later than the expiration of 18 months after the date of the occurrence or termination of the alleged

23   discriminatory housing practice."  As provided in Plaintiff's complaint, the alleged discriminatory act by

24   La Esplanada consisted of sending a "notice of violation" on December 11, 2008.  (Compl., ¶24, ll. 9-

25

26   [5] A copy of the "Final Investigative Report" issued by HUD is attached to the Request for Judicial
     Notice served and filed herewith, as <u>Exhibit G</u>.  The report was provided by the attorney for the United
     States, Beth Pepper on January 4, 2012 via email.  A copy of Ms. Pepper's email is also attached.
27   [6] *United States v. Northside Realty Associates, Inc.* 474 F.2d 1164, 1169 (1973).
28   [7] *Id.*

3

10.)  According to statute, the civil action must have been brought 18 months after December 11, 2008,

or on or before May 11, 2010.  This action was not filed until November 21, 2011 and is therefore

untimely.

## I.   FACTUAL BACKGROUND

On November 21, 2011, the United States brought this action pursuant to the Fair Housing Act[8]

"on behalf of Vladimir Abramov and La Promenade Villas, LLC pursuant to 42 U.S.C. §3612(o)" and

"42 U.S.C. § 3614(a)."  (Compl., p. 1, ¶ 1.)  The suit was filed after defendants elected to have the

matter heard in Federal District Court pursuant to 42 U.S.C. § 3612(a).

Vladimir Abramov and LPV are the owners and developers of Phase II of the La Esplanada

Condominium development that was zoned "exclusively for seniors." (Compl., p. 2, ¶ 6.)  This zoning

was effectuated through the efforts of Abramov's predecessor, Renan Dominguez and his corporation,

La Esplanada, Inc.  In 1999, Mr. Dominguez applied to rezone the 5-acre parcel from a "multi-family

residential district" to "multi-family planned development." (Compl., p. 2-3, ¶ 6-7.)  The City granted

the re-rezoning so that Dominquez could build a 120 condominium development exclusively for seniors.

(Compl., p. 3, ¶ 8.)

The development was built in two phases:  Phase I consisted of 36 units contained in three

buildings and Phase II consists of 84 units contained in 7 buildings.  (Compl., p. 3, ¶¶ 10, 11.)  A

homeowners association was created in 2003 and the CC&R's were recorded on March 10, 2003 clearly

setting forth that development was "designed to provide housing for Senior Citizens" (Compl., p. 3-4,

¶¶ 13, 14, 15.)  After Phase I was completed, Abramov and LPV "purchased from the developer, La

Esplanada Inc. [Dominquez], the land on which the Phase II units were to be built." (Compl., p. 4, ¶

19.)  Abramov and LPV completed construction in 2007 and recoded "Declarations of Annexation"

which made each unit subject to the CC&R's.  (Compl., p. 4-5, ¶ 21.)  Pursuant to the "Declaration of

Annexation" LPV and/or Abramov expressly acknowledged that they were "owners" and that each

---

[8] Title 8 of the Civil Rights Act of 1968, as amended (FHA), 42 U.S.C. §§ 3601 et seq.

1   "[o]wner of Condominium Unit . . . will receive . . . membership in the La Esplanada Unit 1 Owners'

2   Association."[9]

3   At approximately the same time, on January 9 2007, the California Department of Real Estate

4   issued "Final Subdivision Public Report Condominium" (hereinafter the "DRE Final Report").  The

5   DRE Final Report expressly provides that Phase II of the project was "Senior Housing" intended to

6   "provide housing for Senior Citizens (as defined in the recorded declaration) and intended to qualify as a

7   Senior Citizen Housing Development within the meaning of California Civil Code Section 51.3(c)(4), as

8   well as the Federal Fair Housing Act and the Housing for Older Persons Act of 1995.[10]  LPV was the

9   applicant for the DRE Final Report and there can be no doubt that LPV and Abramov expressly knew

10  that Phase II of the project was subject to the CC&R's, was restricted to Senior Housing, and had to be

11  marketed as Senior Housing.

12  Indeed, Abramov began his marketing as "units for persons 55 years of age and older" as he

13  "knew from the time he purchased the property that it was designated as senior housing."[11]  However,

14  because he was unable to sell the units to seniors, he began renting the units to families of all ages in

15  direct violation of the CC&R's, and the Final Subdivision Public Report issued by the State of

16  California.  When the HOA discovered this violation of the CC&R's they sent a single letter to Abramov

17  and LPV on December 11, 2008 informing of the violations and demanding compliance.  (Compl., p. 5,

18  ¶ 24.)

19  Unfortunately, Abramov found a loophole to try and escape the Senior Housing restriction.

20  Rather than comply with the law and his obligations as a member of the HOA, majority owner, and the

21  developer of the project, he filed a complaint with HUD on September 16, 2009 seeking to use the FHA

22  as a sword to justify his own bad acts.  (Compl., p. 7, ¶ 34.)  Abramov, as the developer of Phase II had

23  complete control over the sale and/or rental of any particular unit in Phase II.  While the HOA could

---

[9] A copy of each Declaration of Annexation are attached to the Request for Judicial Notice served and
filed herewith, as Exhibits A - E.

[10] A copy of the "Final Subdivision Public Report Condominium" issued by the Department of Real
Estate of the State of California is attached to the Request for Judicial Notice served and filed
herewith, as Exhibit F.

[11] See HUD's "Final Investigative Report" attached to the Request for Judicial Notice served and filed
herewith, as Exhibit G.

5

1   object, (which they did) this lawsuit, and the alleged non-compliance with the FHA was caused by

2   Abramov's intentional attempts to circumvent the CC&R's and the valid Senior Housing restriction.

3   While the United States has somehow been persuaded to carry the ball for Abramov and LPV, the

4   equities of this entire situation run afoul of the very purpose of the FHA and the Housing for Older

5   Persons Act.[12]

6

7                    **II.       MOTION TO DISMISS PURSUANT TO FRCP 12(b)(7)**

8           **A.      Legal Standard**

9           Under Federal Rule of Civil Procedure 12(b)(7), a party may seek dismissal of an action if a

10  necessary and indispensable party is not joined under Rule 19.  FED. R. CIV. P. 12(b)(7); *see, generally,*

11  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n. 5 (9th Cir. 2004).  Rule

12  19 provides that a person who is subject to service of process and whose joinder will not deprive the

13  court of subject-matter jurisdiction must be joined as a party if, *inter alia*, "in the person's absence

14  complete relief cannot be accorded among those already parties."  Fed. R. Civ. P. 19(a)(1)(B)(i).  The

15  court's primary concern is whether or not justice can be done without the presence of the unjoined party.

16  (*Morrell v. McFarland*, 527 F.Supp. 324 (1981, ND W.Va.).  Here, in order for this Court to do justice,

17  Vladimir Abramov and Promenade Villas, LLC, must be joined as indispensable parties.

18          **B.      Vladimir Abramov And Promenade Villas, LLC, Must Be Joined As Indispensable
                        Parties Or The Case Must Be Dismissed.**

19

20          As discussed above, Abramov and LPV developed Phase II and are members of the defendant

21  HOA.  In bringing this action on behalf of Abramov and LPV against the HOA, the United States is

22  representing the very party it is suing.  How can this be?

23

24  _____

25  [12] The FHA and the Housing for Order Persons Act (HOPA) amendments do not prevent housing for
    senior citizens.  Congress intended to protect families with children while still fully protecting the
    rights of senior citizens who live in retirement communities to exclude families with children.  *Taylor*
26  *v. Rancho Santa Barbara*, 206 F.3d 932, 936 (9th Cir. 2000).  The Housing for Older Persons Act was
    passed in order to protect senior housing.  It was not intended to be used by a developer to circumvent
27  the clear intent of the City in granting the zoning amendment, the CC&R's, the expectations of the
    purchases of Phase I and their right to live in senior housing.
28                                                                    6

**DEFENDANT'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM FOR RELIEF PURSUANT TO FRCP RULE 12(b)(6)
and 12(b)(7) and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
G:\7436\PLEADINGS\MOTION TO DISMISS 12(B)(6)\NTC-MEMOP&A.MTNDISMISS.DOC

1    As provided in the "Final Investigative Report" issued by HUD, there are no other "aggrieved

2    parties" other than Abramov and LPV.[13]   While not admitting that a developer who attempts to

3    circumvent senior housing restrictions by filing a complaint against the HOA of which he is a member

4    meets the definition of "aggrieved party" under 42 U.S.C. § 3602 (i), Abramov and LPV are clearly the

5    only parties who stand to benefit by this litigation.

6        In order to do justice and properly evaluate the claims and defenses in the case, Abramov and

7    LPV must be made parties to this litigation or the case must be dismissed.  Their absence is highly

8    prejudicial to the HOA in that Abramov and LPV were responsible for creating many of the violations

9    of which the United States currently complains.  Abramov and LPV should not be allowed to stand in

10   the shadow of the United States and allow the United States to facilitate Abramov's bad acts and the

11   destruction of the HOA.  As members of the HOA and violators of the FHA and facilitators of this mess,

12   both Abramov and LPV must be made defendants to this action and forced to stand alongside the HOA

13   and the City.

14

15       III.    **MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

16       A.    **Legal Standard**

17       Where a complaint fails to state a claim upon which relief can be granted, a district court must

18   dismiss the claim under Federal Rule of Civil Procedure 12(b)(6).  To survive a Rule 12(b)(6) motion to

19   dismiss, a complaint must contain a "short and plain statement" of the facts showing that plaintiffs are

20   entitled to relief.  FED. R. CIV. P. 8.  To meet this standard, plaintiffs must allege "enough facts to state

21   a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 750.  They must allege facts that

22   add up to "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 129 S.

23   Ct. 1937, 1949 (2009), and must allege facts sufficient to "raise a right to relief above the speculative

24   level," *Twombly*, 550 U.S. at 555.  Under Rule 8, a complaint does not suffice if it tenders "naked

25   assertions" without any "further factual enhancement."  *Iqbal*, 129 S. Ct. at 1949 (*citing Twombly*, 550

26   U.S. at 557).

---

27   [13] See page 3 of Final Investigative Report.  Section "B" of the Report is titled "Other Aggrieved
     Persons."  The only entry under Section" B" is "None."

28                                                       7

In evaluating whether a claim meets the pleading standard, the court must assume that the plaintiff's factual allegations are true, and must draw all reasonable inferences in the plaintiff's favor. *See*, *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court need not accept as true, however, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations," and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1940, 1950. If the alleged facts do not permit the court to infer more than the mere possibility of misconduct, the court should find that the complaint has not shown that the plaintiffs are entitled to relief, and the complaint must be dismissed. *Id.*

**B.**    **Plaintiff's Second Claim For Relief Fails To State A Claim For Pattern And Practice.**

  **1.**    **Plaintiff Fails To Allege Sufficient Acts To Constitute "Pattern Or Practice."**

Plaintiff's complaint fails to allege facts sufficient to support plaintiff's "pattern or practice" allegation. Plaintiff only alleges a single act by the HOA that "[o]n or about December 11, 2008, the HOA sent a "notice of violation of CC&Rs ("notice") to LPV's representative demanding that LPV comply with the CC&Rs … ." (Compl. ¶24, ll. 9-10.) A "pattern or practice" must "encompass more than an isolated or accidental or peculiar event."[14] A single incident of discrimination, standing alone, does not justify a finding of "pattern or practice."[15]

"Pattern or practice" cases require more than an isolated, accidental, or sporadic discriminatory act. The Government must establish that discrimination was the defendant's regular standard operating procedure rather than the unusual practice. *International Brotherhood of Teamsters v. United States*, 431 U.S., 324, 336 (1977). In other words, the discriminatory conduct must be widespread. *The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 701-702 (9th Cir. 2009).

---

[14] *United States v. Northside Realty Associates, Inc.*, 474 F.2d 1164, 1169 (1973).
[15] *Id.*

8

1    Here, the conclusory allegations are insufficient to plead a standard operating procedure of

2    discrimination on the part of the HOA.  A single letter to Abramov and LPV does not constitute a

3    standard operating procedure.  LPV and Abramov were members of the HOA, and had expressly

4    acknowledged and bound themselves to the Senior Housing restrictions contained in the CC&R's.[16]

5    Abramov and LPV exercised complete control of Phase II as evidenced by the fact that the letter had to

6    be written in the first place.  Certainly, a good faith effort by the HOA to obtain compliance of its

7    members and developer by way of a single letter does not amount to widespread discriminatory

8    conduct.

9    **2.    Plaintiff Second Claim For Relief Is Barred By The Statute Of Limitations.**

10   "Pattern or practice" cases are governed 42 U.S.C.S. § 3614.  Pursuant to the plain language of

11   42 U.S.C.S. § 3614(b)(1)(B), an action must be "commenced not later than the expiration of 18 months

12   after the date of the occurrence or the termination of the alleged discriminatory housing practice."

13   As alleged by plaintiff, the alleged "discriminatory housing practice" consisted of a letter sent by

14   the HOA on December 11, 2008.[17]  Eighteen months thereafter would be on or about April 11, 2010.

15   Plaintiff's complaint was not filed until November 21, 2011—almost 19 months too late and almost

16   three full years after the alleged "discriminatory housing practice."[18]

17

18   **IV.    CONCLUSION**

19   The FHA and the Housing for Order Persons Act (HOPA) amendments do not prevent housing

20   for senior citizens.  Congress intended to protect families with children while still fully protecting the

21   rights of senior citizens who live in retirement communities to exclude families with children.  *Taylor v.*

22   *Rancho Santa Barbara*, 206 F.3d 932, 936 (9th Cir. 2000).  The Housing for Older Persons Act was

23   passed in order to protect senior housing.  In this case, the developer applied for and contained

---

24   [16] See Complaint, paragraph 21 re: Abramov's execution of a series of "Declarations of Annexation"
25   expressly declaring that each Phase II unit was subject to the CC&Rs.  See also the DRE Final
     Subdivision Report attached to the Request for Judicial Notice served and filed herewith, as __Exhibit F__.
26   [17] Plaintiff's Complaint, p. 5, paragraph 24.
     [18] Even if we were to use the date that Abramov first complained to HUD, the "Pattern or Practice"
27   cause of action is still untimely.  Mr. Abramov filed his complaint with HUD on September 16, 2009.
     (Complaint, p. 7, paragraph 34.)  Thus, an action would have had to have been filed no later than
28   approximately March 16, 2011.

9

DEFENDANT'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S SECOND CLAIM FOR RELIEF PURSUANT TO FRCP RULE 12(b)(6)
and 12(b)(7) and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
G:\7436\PLEADINGS\MOTION TO DISMISS 12(B)(6)\NTC-MEMOP&A.MTNDISMISS.DOC

1  significant concessions from the City of Santa Rosa to build senior housing.  The owners of Phase I

2  purchased their homes in reliance upon the Senior Housing restriction.[19]  The CC&R's clearly set forth

3  the Senior Housing restriction and Abramov and LPV knew of the Senior Housing Restriction, marketed

4  the units as Senior Housing, and Annexed Phase II into the HOA.  By this action brought on behalf of

5  the developer Abramov and LPV, the only aim is to frustrate the purpose of HOPA, deprive the current

6  owners of their desire to live in a Senior Housing community and benefit Abramov and LPV so that they

7  can circumvent the age restriction and obtain a greater return on their investment.  As provided by HUD

8  in their "Final Investigated Report", there are no other "aggrieved persons" other than Abramov and

9  LPV and no other persons stand to benefit from this action.

10    Abramov and LPV are indispensable parties to this litigation and justice cannot be served in their

11  absence.    In any event, Plaintiff's "Second Claim For Relief" must be dismissed with prejudice because

12  no "pattern or practice" has been alleged and none can be.  All the HOA did was send a single letter, in

13  complete good faith, attempting to obtain compliance of the CC&Rs.

14

15  DATED:  January 19, 2012                    BEYERS │ COSTIN

16

17                                          By:    /s/ Peter L. Simon
                                                _____
18                                              PETER L. SIMON
                                                Attorneys for Defendant
19

20

21

22

23

24

25

26

27  _____
    [19] See HUD Final Investigative Report, Interview with Jamine Olsen, p. 10-11.
28                                          10