STEVEN H. ROSENBAUM, Chief
R. TAMAR HAGLER (SBN 189441), Deputy Chief
BETH PEPPER, Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Phone:  (202) 305-0916

MELINDA HAAG
United States Attorney

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CV-11-5641 SBA |
| v. | ) | |
| | ) | |
| CITY OF SANTA ROSA, and | ) | **CONSENT ORDER** |
| LA ESPLANADA UNIT 1 OWNERS' | ) | |
| ASSOCIATION, | ) | |
| Defendants. | ) | |
| | ) | |

## CONSENT ORDER

1.      The United States initiated this action on November 21, 2011 against the City of Santa Rosa ("City") under 42 U.S.C. §3614(a) and La Esplanada Unit 1 Owners' Association ("HOA") under 42 U.S.C. §§ 3612(o) and 3614(a).  In its complaint, the United States alleges that the Defendants violated the Fair Housing Act, Title VIII of the Civil Rights Act of 1988, 42 U.S.C. §§ 3601 *et seq.* ("FHA"), on the basis of familial status by enforcing a 55-and-over age restriction against La Promenade Villas, LLC ("LPV") and Vladimir Abramov.  In particular, the United States alleges that the Defendants violated the FHA by requiring that LPV and Vladimir Abramov stop leasing units to tenants under the age of 55 including families with children.

2.      The United States alleges that the Defendants' actions described in the Complaint constituted: a refusal to sell or rent after the making of a bona fide offer, or to negotiate for the sale or rental of, or otherwise make unavailable or deny a dwelling to any person because of familial status in violation of 42 U.S.C. § 3604(a); discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

therewith because of familial status in violation of 42 U.S.C. § 3604(b); the making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status in violation of 42 U.S.C. § 3604(c); a representation to any person because of familial status that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available in violation of 42 U.S.C. § 3604(d); and, the coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 804 of the Fair Housing Act in violation of 42 U.S.C. § 3617.

3.      The United States further alleges that the conduct of the Defendants described in the Complaint constitutes a pattern or practice of resistance to the full enjoyment of any of the rights granted by the FHA or a denial to a group of persons of rights granted by the FHA, which raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

4.      The parties desire to avoid costly and protracted litigation and agree that the claims against the Defendants should be settled and resolved without the necessity of a trial.  By entering into this Consent Order, the Defendants do not admit to any violation of the Fair Housing Act, 42 U.S.C. §3601, *et seq.*, or any other violation at law or equity, and this Consent Order shall not constitute an admission of any wrongdoing by the Defendants.

5.      The parties agree that the following terms shall have the meaning set forth herein for purposes of this Consent Order:

a.      "Phase I property" means a condominium development named "La Esplanada," consisting of thirty-six (36) units in three buildings located at 1501 La Esplanada Place; 1591 La Esplanada Place; and 1611 La Esplanada Place and Common Lot 1 as shown on the subdivision map entitled "La Esplanada Unit I" in Book 634 of Maps, pages 7-13, Sonoma County Records, and attached hereto as Exhibit 1.

b.      "Phase II property" means a housing development named "La Promenade Villas" consisting of 84 units located at 1511 La Esplanada Place; 1531 La Esplanada Place;

1541 La Esplanada Place; 1551 La Esplanada Place; 1561 La Esplanada Place; 1571 La Esplanada Place;  1581 La Esplanada Place and Common Area Lot 2 as shown on the subdivision map entitled "La Esplanada Unit 2" in Book 686 of Maps, pages 20-26, Sonoma County Records, and attached hereto as Exhibit 2.

        c.      "Subject Property" refers to Phase I and Phase II together.

        d.      "HOPA community" means a dwelling or group of dwelling units governed by a common set of rules, regulations, or restrictions, including a municipally zoned area, that is in compliance with the Housing for Older Persons Act ("HOPA"), 42 U.S.C. §3607(b)(2)(C), and the implementing regulations of the United States Department of Housing and Urban Development ("HUD"), 24 C.F.R. §§ 100.305-100.307.

        6.      The HOA's representatives and LPV have determined and agree that they shall endeavor to have all age restrictions removed from the Subject Property.

        7.      The parties agree to the entry of this Consent Order as indicated by the signatures below.

Therefore, it is **ORDERED, ADJUDGED and DECREED** as follows:

## I. Factual Stipulations

        8.      The parties agree to the following facts:

        a.      The City of Santa Rosa is a municipality in Sonoma County, California, and is responsible for enacting and enforcing zoning and land use laws within its jurisdiction.

        b.      La Esplanada Unit 1 Owners' Association is a homeowners' association that adopts and enforces compliance with rules, including restrictive covenants, governing a condominium development called "La Esplanada" located in Santa Rosa, California.

        c.      On June 3, 1999, a real estate developer, La Esplanada, Inc., applied to the City to rezone a 5-acre parcel of land located at 275 Colgan Avenue in Santa Rosa for the purpose of building a 120-unit condominium development exclusively for seniors.  In response, on April 4, 2000, the City enacted Ordinance No. 3470, which changed the classification of the property at issue from a "multi-family residential district" ("R-3-20") to "multi-family residential planned development" ("R-3-PD").  Ordinance No. 3470 specified, among other things, that this

designation authorizes "Multifamily Senior Residential Land Use in conformance with the City's Density Bonus Ordinance and the Land Use Element of the City's General Plan which designates the site for Medium Density Land Use."

d.      The 120-unit condominium development was built in two phases.  Phase I consists of three buildings with a total of 36 units.  Phase II consists of seven buildings with a total of 84 units.

e.      In March 2003, a homeowners' association, La Esplanada Unit 1 Owners' Association (Defendant "HOA"), was incorporated with regard to Phase I.

f.      On March 10, 2003, a document entitled "Declaration of Covenants, Conditions and Restrictions of La Esplanada Unit 1-A Condominium" ("CC&Rs") was filed in the Sonoma County Recorder's Office that restricted the occupancy of all 36 Phase I units to persons 55 years of age and older.

g.      On April 11, 2004, the CC&Rs were amended by reducing the minimum age requirement for residents from 55 to 40 years, which amendment was recorded with the Sonoma County Recorder's Office on November 9, 2004.

h.      By December 2005, all 36 Phase I units had been sold.

i.      In December 2005, La Promenade Villas, LLC ("LPV"), through its representative, Vladimir Abramov, bought the land for constructing the Phase II units.  On March 23, 2006, the HOA rescinded the November 9, 2004 amendment and reinstated the original 55-and-over age restriction for the Phase I units.  On January 31, 2007, LPV filed "Declarations of Annexation" purporting to subject Phase II units to the HOA's CC&Rs.  In July 2007, LPV completed construction of the Phase II units.

j.      In July 2008, LPV started to rent units to tenants of all ages, some of whom included families with children under the age of 18 years, after it reports to have discovered that persons of all ages were living in Phase I.

k.      On or about December 11, 2008, the HOA sent a "Notice of Violation of CC&Rs" to LPV demanding that LPV comply with the CC&Rs "so that at least one resident in each unit owned by LPV be 55 years of age or older."  The HOA's Notice provided that it "understands

that LPV will have to give proper notice of lease termination to tenants who do not meet the age restriction of the Declaration." The HOA demanded that LPV bring its units into compliance within sixty days of the letter, and stated that if LPV did not do so, the HOA may proceed with disciplinary action against it.

l.        On January  22, 2009, the City issued a "Notice of Complaint" to LPV stating that the City had received a complaint that LPV was renting units to tenants who were not 55 years of age or older.

m.        On July 7, 2009, the City stated that LPV should stop leasing to persons who were not 55 years of age or older; should disclose information regarding the tenants who were not 55 years of age or older so that the City could evaluate a reasonable vacation process; and that if LPV failed to comply, the City would regard such conduct to be "a continuing code violation" and "take the appropriate response."

n.        Prior to and at the time of its enforcement action, the City's zoning Ordinance and Policy Statement upon which it relied for its enforcement action specified that the development was for seniors but had no specific age restriction governing the Subject Property.

o.        At the time of their enforcement actions against LPV, the Defendants had no HOPA-compliant procedures or policies for conducting age verifications with regard to the occupants in the Subject Property and had not conducted any age verification surveys.

p.        At the time the City and the HOA began enforcement actions against LPV, families with children were living in the Phase II units and continued to live there as of the date of the filing of the United States' Complaint.  Some families have month to month leases and others have lease terms that have not yet expired.

## II. Procedural History

9.        On September 16, 2009, Vladimir Abramov filed a timely complaint with HUD against the City and the HOA pursuant to the FHA alleging familial status discrimination. Subsequently, the administrative complaint was amended to include LPV as an additional complainant.

10.     Pursuant to 42 U.S.C. §§ 3610(a) and (b), the Secretary of HUD conducted an investigation, attempted conciliation, and prepared a final investigative report.  Pursuant to 42 U.S.C. § 3610(g)(1), the Secretary determined that reasonable cause existed to believe that illegal discriminatory housing practices had occurred.  On September 1, 2011, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. §§ 3610(g)(2)(A), charging the Defendants with engaging in discriminatory practices in violation of the FHA.

11.     The Defendants timely elected to have the claims asserted in HUD's Charge of Discrimination resolved in a civil action in federal district court pursuant to 42 U.S.C. §3612(a).

12.     On September 20, 2011, HUD's Office of Administrative Law Judges issued a Notice of Election and authorized the Attorney General to commence a civil action pursuant to 42 U.S.C. § 3612(o).   On November 21, 2011, the United States filed this action.

### III.  General Injunction

13.     Each Defendant, its agents, employees, successors, and all persons in active concert or participation with it, is hereby enjoined from:

a.     refusing to sell or rent after the making of a bona fide offer, or to negotiate for the sale or rental of, or otherwise making unavailable or denying, a dwelling to any person because of familial status under 42 U.S.C. § 3604(a);

b.     discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of familial status under 42 U.S.C. § 3604(b);

c.     making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination under 42 U.S.C. § 3604(c);

d.     representing to any person because of familial status that a dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available under 42 U.S.C. § 3604(d); and,

e.      coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the familial status provisions of Section 3604 of the Fair Housing Act under 42 U.S.C § 3617.

14.     Each Defendant, its agents, employees, successors, and all persons in active concert or participation with it, is hereby enjoined from applying or enforcing a 55-and-over age restriction at any property, including the Subject Property, unless and until it has complied with the Housing for Older Persons Act ("HOPA"), 42 U.S.C. § 3607(b)(2)(C), HUD's implementing regulations, 24 C.F.R. §§ 100.305-100.307, and paragraphs 18-26 of this Consent Order with respect to the property at which it seeks to apply or enforce an age restriction.

## IV.  The Subject Property

15.      The City shall ensure its regulation of the Subject Property complies with HOPA and the provisions of this Consent Order.  Within one hundred and eighty (180) days of the date of entry of this Consent Order, Ordinance No. 3470 shall be brought into compliance with HOPA by addressing those portions that purport to limit the Subject Property to senior and age-restricted housing.  Such compliance shall be achieved in a manner consistent with local ordinances and procedures. The City shall be solely responsible for all costs and expenses associated with any rezoning actions related to the Subject Property, which the City estimates to be approximately twelve thousand five hundred dollars ($12,500), and which represents a waiver of the costs that applicants such as LPV would have otherwise incurred to seek a rescission and/or rezoning of the senior restriction for the Subject Property through the City's procedures. The City shall notify the United States of all zoning and compliance actions relating to the Subject Property consistent with the reporting requirements in this Consent Order.

16.     By one hundred and eighty (180) days after the date of entry of this Consent Order, the HOA shall operate the Subject Property as either: (a) a non-age restricted community, having rescinded the 55-and-over age restriction from its CC&Rs and other HOA-related

publications; or (b) an age-restricted community for persons 55 years of age or older, having complied with the requirements in paragraphs 18-21 below.[1]

17.     If the HOA elects after either a vote of its membership in accordance with California Civil Code § 1363.03, or by judicial action in accordance with California Civil Code § 1356, to operate the Subject Property as a non-age restricted community, the HOA shall notify the United States of its election and shall produce all documents reflecting the rescission of the 55-and-over age restriction from the CC&Rs and other HOA-related publications consistent with the reporting requirements in this Consent Order.

18.     If the HOA elects to operate the Subject Property as "housing for older persons," restricting occupancy to persons who are 55 years of age or older, the HOA shall notify the United States of its intention to do so by submitting all relevant documents supporting its claim that it meets the "housing for older persons" exemption, 42 U.S.C. § 3607(b), 24 C.F.R. §§ 100.305-100.307, including appropriate documentation that at least 80% of the property's occupied units are occupied by at least one person who is 55 years of age or older and that the HOA otherwise meets the requirements set forth in this subsection.  Within sixty (60) days of receipt of such documents, the United States shall notify the HOA whether it: (a) may be excused from paragraph 13 of this Consent Order, or (b) may not be so excused because the information provided does not support such a determination.  The United States may also request additional or clarifying information. The HOA shall remain subject to all provisions of this Consent Order unless and until the United States provides written confirmation that the HOA is excused, or the Court, upon application of the HOA, rules that the HOA is excused.

19.     In order to satisfy the requirements under the Housing for Older Persons Act ("HOPA"), 42 U.S.C. § 3607(b)(2)(C), and HUD's implementing regulations, 24 C.F.R. §§ 100.305-100.307, the HOA must demonstrate its intent that the Subject Property be intended and operated for occupancy by persons 55 years of age and older; and (i) have at least 80 percent of the occupied units occupied by at least one person who is 55 years of age or older; (ii) publish

---

[1] In the event that there is a legal separation of Phase I from Phase II, the term "Phase I" shall be substituted for the term "Subject Property" in paragraphs 16-19 of this Consent Order.

and adhere to policies and procedures that demonstrate the intent to provide housing for persons 55 years of age or older in the Subject Property; and, (iii) comply with rules issued by the Secretary of HUD for verification of occupancy for the Subject Property, which include verifications by reliable surveys and affidavits as set forth in 24 C.F.R. §§100.305-100.307.

20.     In addition to the requirements in paragraphs 18 and 19 above, the HOA must satisfy the following conditions in order to be excused from paragraph 13 of this Consent Order:

a.     if the HOA is seeking to operate only the Phase I property as a HOPA community, it must: (i) notify the owner of Phase II of its intention to operate the Phase I property as a separate legal entity and request that the owner of Phase II de-annex and cooperate with Phase I to achieve a legal separation; and (ii) verify to the United States that legal separation has been achieved through de-annexation and/or compliance with all other state and local laws and that the Phase I property is being maintained separate from the Phase II property as a distinct "housing facility or community," defined in 24 CFR § 100.304(b) to be "any dwelling or group of dwelling units governed by a common set of rules, regulations, or restrictions;" and,

b.     be prepared to instruct current and prospective sellers and/or lessors that, in their advertising of units for sale or rental, they must indicate that such units are intended to be occupied by at least one person 55 years of age or older.

21.     The HOA shall not discriminate against families with children in order to achieve 80 percent occupancy by persons 55 years of age or older.  In seeking to reach the 80 percent threshold, the HOA shall not, among other things, reserve unoccupied units for persons 55 years of age or older, advertise itself as housing for older persons, evict families with children, deny families with children an opportunity to occupy vacant units, discourage families with children from occupying units, or otherwise discriminate against families with children in the terms, conditions, or privileges of rental or sale of a unit.

## V.  The City's Obligations under HOPA

22.     When the City exercises its zoning authority to permit or require a developer or property owner to develop or operate a senior housing development, the City shall satisfy the requirements under HOPA, 42 U.S.C. §3607(b)(2)(C), and HUD's implementing regulations in 24 C.F.R. §§100.305-100.307.

23.     To carry out the requirements in paragraph 22, the City shall, at least: (i) include the 55-and-over age restriction in the applicable zoning ordinance involving a senior housing development and designate the age restriction of the zoned property on its zoning map;  (ii) require that developers, owners, homeowners' associations, and other housing communities (hereinafter "communities") submit biennial age verifications consistent with HOPA; and (iii) review and certify that the community has conducted age verification surveys consistent with HOPA.

24.     To carry out the requirements specified in paragraph 22, within sixty (60) days of the entry of this Consent Order, the City shall designate a City employee and agency to review and certify age verification surveys, and shall notify the United States of such designation.

25.     The City shall, within sixty (60) days of the entry of this Consent Order, submit to the United States for review and approval an enforceable Rule (which may be in the form of a proposed ordinance) meeting the requirements set forth in paragraphs 22 and 23 above.  The City shall specify in the Rule that communities that fail to comply with its terms shall be subject to enforcement actions under the City's municipal code.  The City shall implement the Rule within ninety (90) days of receiving its approval from the United States.

26.     As of the effective date of this Consent Order, the City shall not take any administrative or judicial action to enforce an age restriction with respect to a housing facility or community whose property has been zoned as an age-restricted or senior-only community unless the property at issue meets the requirements of the City's Rule referenced in paragraph 25 above, HOPA, and this Consent Order.

27.     With regard to any HOPA community that the City zones in compliance with Section V of this Consent Order, the City shall be excused from compliance with paragraph 13 of this Consent Order.

## VI.  <u>Mandatory Training</u>

28.     Within forty-five (45) days of the entry of this Consent Order, the HOA shall provide a copy of this Order to its officers, agents, and employees, and to each current HOA member and shall instruct all members to provide a copy to each of their tenants.  The HOA shall verify in a statement signed by its authorized representative that it has provided a copy of this Order to its officers, agents, and employees, and to each current owner/member, explained its terms, and provided these persons with an opportunity to ask questions. The statement shall be substantially in the form of Exhibit 3.  The HOA shall secure a signed statement from each of its officers, agents, and employees acknowledging that he or she has received and read this Order and agrees to abide by its terms.  This statement shall be substantially in the form of Exhibit 4.

29.     During the term of this Consent Order, the HOA shall provide a copy of this Order to any person who buys a unit and is subject to the HOA and shall instruct all members to provide a copy to each of their tenants within thirty (30) days of the purchase.  The HOA shall verify to the United States in a statement substantially in the form of Exhibit 3 that it has done so.

30.     During the term of this Consent Order, within thirty (30) days after the appointment of a new officer of the Board of the HOA, or the hiring of any new property manager, the HOA shall provide a copy of this Consent Order to each such officer or property manager, and the HOA shall verify in a statement signed by its authorized representative that it has provided a copy of this Order substantially in the form of Exhibit 3.  The HOA shall secure a signed statement from each stating that he or she has received and read the Order, had the opportunity to have questions about the Order answered, and that he or she has agreed to abide by its terms. The officer and manager's statement shall be substantially in the form of Exhibit 4.

31.     Within ninety (90) days from the date of entry of this Consent Order, the HOA's officers, agents and employees shall undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of familial status and the requirements of the HOPA exemption.  The training shall be conducted by an independent, qualified third party, approved in advance by the United States, and any expenses associated with this training shall be

borne by the HOA. The HOA shall obtain certifications of attendance, executed by each individual who received the training, confirming their attendance, in a form attached hereto as Exhibit 5.  This certification shall include the name of the course, the date the course was taken, and the length of the course and/or time within which the course was completed.

32.     During the term of this Consent Order, the HOA must conduct training once every two years and mandate the attendance of any new directors, employees and agents who have not previously attended a training conducted pursuant to this Consent Order.  The HOA shall provide executed certifications to the United States in a form attached hereto as Exhibit 5.

33.     Within forty-five (45) days of the entry of this Consent Order, the City shall provide a copy of this Order to all employees and agents responsible for enacting, applying, and enforcing zoning and land use requirements.  These include, among others, the City's Department of Community Development planning and code enforcement staff, the City's Housing Authority staff, and the City Attorney's office (each a "Responsible Employee" and hereinafter referred to as "Responsible Employees"). The City shall submit to the United States that it has provided a copy of this Consent Order to the Responsible Employees, that it has provided these persons with an opportunity to ask questions, and that it has informed these persons that they must abide by the terms of this Order.  The Responsible Employees shall sign a statement in the form of Exhibit 4, acknowledging that they have received and reviewed this Order and that they agree to abide by the terms of this Order.

34.     During the term of this Order, within thirty (30) days after the hiring of any employee within the category of a Responsible Employee, as set forth above, the City shall provide a copy of this Consent Order to said person and secure a signed statement in the form of Exhibit 4 stating that he or she has received and read the Order, had the opportunity to have questions about the Order answered, and that he or she has agreed to abide by the terms of this Order.

35.     Within one hundred twenty (120) days from the date of entry of this Order, the Responsible Employees shall undergo in-person training on the Fair Housing Act, with specific

emphasis on discrimination on the basis of familial status and the requirements of the HOPA exemption.  The training shall be conducted by an independent, qualified third party, approved in advance by the United States, which approval shall not be unreasonably withheld, and any expenses associated with this training shall be borne by the City.  The City shall obtain certifications of attendance, executed by each individual who received the training, confirming their attendance, in a form attached as Exhibit 5.  This certification shall include the name of the course, the date the course was taken, and the length of the course and/or time within which the course was completed.

36.    During the term of this Consent Order, the City must conduct training once every two years and mandate the attendance of any new Responsible Employees who have not previously attended a training conducted pursuant to this Consent Order. The City shall produce such certifications to the United States on the form attached hereto as Exhibit 5 after such training is completed.

## VII.  Reporting and Record-Keeping Requirements

37.    Each Defendant shall prepare four Compliance Reports ("Reports") during the term of this Consent Order.  The Reports shall detail the actions each Defendant has taken to fulfill its obligations under this Consent Order and include supporting documentation expressly required by this Consent Order.  Each Defendant shall deliver the Reports to counsel for the United States.[2]  Each Defendant shall submit the Reports consistent with the following schedule: the first Report is due six months after the entry of this Consent Order; the second Report is due twelve months after the entry of this Consent Order; the third Report is due twenty-four (24) months after the entry of this Consent Order; and the fourth Report is due sixty (60) days prior to the date upon which the Consent Order is scheduled to expire.

---

[2]  The Reports and all required certifications and documentation of compliance with the terms of this Consent Order shall be submitted to:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Ave., NW-NWB, Washington, D.C. 20530. Attn: DJ No. 175-11-353, or as otherwise directed by the United States.

38.     As to the HOA, the Reports shall contain information about the HOA's compliance efforts during the preceding reporting period, including, but not limited to:

a.     copies of all acknowledgements signed by the HOA, its agents and employees, and all certifications of attendance of each participant in mandatory trainings pursuant to paragraphs 28-32 of this Consent Order;

b.     copies of documents evidencing the election to become an all-age community including the rescission of the 55-and-over age restriction from the CC&Rs pursuant to paragraph 17 of this Consent Order;

c.     copies of any documents required by 42 U.S.C.§ 3607(b), 24 C.F.R. §§100.305-307 and paragraphs 18-21 of this Consent Order to prove that the HOA meets the exemption for "housing for older persons," if it has elected to operate as a HOPA community;

d.     copies of any written complaints and a description of any oral complaints of housing discrimination based on familial status made against the HOA over the term of this Consent Order, including: the date of such complaint; the basis of the complaint; steps taken by the HOA to resolve the complaint; and the terms of any resolution, or reasons the complaint is not resolved; and

e.     copies of all documents evidencing a legal separation between Phase I and Phase II.

39.     As to the City, the Reports shall contain information about the City's compliance efforts during the preceding reporting period, including, but not limited to:

a.     the status and a copy of the zoning changes, rescissions, and/or other compliance actions governing the Subject Property pursuant to paragraph 15 of this Consent Order;

b.     copies of ordinances, agreements with HOPA communities, and age verifications for such HOPA communities, if any, pursuant to paragraphs 22 and 23 of this Consent Order;

c.     the  name and address of the person and agency designated pursuant to paragraph 24 of this Consent Order;

d.      the status of the implementation of the Rule, and a copy thereof, identified in paragraph 25 of this Consent Order;

e.      copies of all acknowledgements signed by Responsible Employees, and all certifications of attendance of each participant in mandatory trainings pursuant to paragraphs 33-36 of this Consent Order; and

f.      copies of any written complaints and a description of any oral complaints of housing discrimination based on familial status made against the City over the term of this Consent Order, including: the date of such complaint; the basis of the complaint; steps taken by the City to resolve the complaint; and the terms of any resolution, or reasons the complaint is not resolved.

40.      For the duration of this Consent Order, the Defendants shall maintain all records relating to implementation of and compliance with all provisions of this Consent Order.  With regard to the City, this obligation includes all records related to zoning matters in which the City has used its zoning authority to permit or require senior housing for persons 55 years of age or older.  The United States shall have the opportunity to inspect and copy any records maintained as required by and relevant to this Consent Order after giving reasonable notice to Defendants.

## VIII.   Compensation and Waiver of Costs to Aggrieved Persons

41.      As set forth in paragraph 15 above, the City shall waive the costs and expenses associated with any rezoning and/or compliance actions related to the Subject Property in an amount that the City estimates to be twelve thousand five hundred dollars ($12,500).

42.      Aggrieved persons, LPV and Vladimir Abramov, shall execute a release to the City in substantially the form of Exhibit 6 and deliver it to the United States within thirty (30) days after the City completes the action required in paragraph 15.  Counsel for the United States shall deliver the original, signed release to counsel for the City within twenty (20) days after receipt.[3]

---

[3]  The City and the HOA have separately agreed to execute mutual releases.

43.     The HOA shall compensate the aggrieved persons, LPV and Vladimir Abramov, by granting them a set-off in the amount of forty-four thousand dollars ($44,000.00) in connection with any assessments, fees, expenses, or other costs that the HOA has alleged it is owed in a state court case captioned, *HOA et. al. v. LPV*, *et.al*, SCV-251158, filed in the Superior Court of California, County of Sonoma.[4]  The HOA shall verify to the United States the grant of such set-off within fifteen (15) days of the execution thereof.  LPV and Vladimir Abramov shall execute a release in substantially the same form as Exhibit 7 and deliver such release to the United States within fifteen (15) days of the entry of this Consent Order.  Within twenty (20) days after the HOA provides adequate verification that LPV and Vladimir Abramov have received the benefit of the set-off, which verification is subject to the United States' approval, counsel for the United States shall deliver the original, signed release to counsel for the HOA.

44.     The HOA shall assume all of the HOA's costs and attorneys' fees associated with its defense of the HUD administrative complaint and this lawsuit and shall not pass on any attorneys' fees and/or legal costs or assessments associated with the HUD administrative complaint, this lawsuit and/or the HOA's compliance with this Consent Order to LPV, Vladimir Abramov, and/or their successors and assigns.  The HOA shall verify to the United States that no such costs have been passed on to LPV and/or Vladimir Abramov in the Reports required by paragraph 37 of this Consent Order.

## IX.   Civil Penalty

45.     Within thirty (30) days after the entry of this Consent Order, the City shall pay five thousand dollars ($5,000) to the United States as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.  This payment shall be in the form of an electronic fund transfer pursuant to written instructions to be provided by the United States.

46.     The HOA shall pay five thousand dollars ($5,000) to the United States as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.  The HOA shall

---

[4]  The aggrieved persons have consulted counsel representing them in the state court case with regard to the compensation referenced in paragraph 43.

make such payment in two equal installments of twenty-five hundred dollars ($2,500) each as follows: the first installment shall be made within one hundred and eighty (180) days after the entry of this Consent Order, and the second shall be made within the subsequent one hundred and eighty (180) days. These payments shall be in the form of an electronic fund transfer pursuant to written instructions to be provided by the United States.

## X.   Scope and Duration of Consent Order

47.     The provisions of this Consent Order shall apply to all the Defendants, their employees, agents, successors, and all persons acting in active concert or participation with them.

48.     This Consent Order is effective immediately upon its entry by the Court and shall remain in effect for three (3) years.

49.     The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice.

50.     All parties shall be responsible for their own attorney's fees and court costs incurred in this federal court action.

## XI.   Remedies for Non-Compliance, Time for Performance, and Modifications

51.     The United States may move the Court to extend the period in which this Consent Order is in effect if the Defendants violate one or more terms of the Order or if the interests of justice otherwise require an extension of the terms of the Order.  If the zoning changes, rescission, and/or other compliance actions with HOPA do not occur as related to the Subject Property, the United States shall have the right to bring either an enforcement action to enforce the terms of this Consent Order or the right to re-initiate this lawsuit against the City.

52.     Any time limits for performance imposed by this Consent Order may be extended by mutual written agreement of the parties.

53.     The parties to this Consent Order shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event the United States

contends that there has been a failure by any Defendant to perform in a timely manner any act required by this Order or otherwise to comply with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity.

54.     The parties agree that, as of the date of entry of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described in paragraph 2.  To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information or things related to matters described in paragraph 2, the party is no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves Defendants of their obligations to comply with the terms of this Consent Order, including the reporting requirements set forth in paragraphs 37-39, and the document retention provision in paragraph 40.

**IT IS SO ORDERED**:

This 1 day of August, 2012.

_____
The Honorable Judge Saundra Brown Armstrong
United States District Judge

By their signatures below, the parties consent to the entry of this Consent Order.

**For the United States**:

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division


_____          **Date**:_____
STEVEN H. ROSENBAUM
Chief, Housing and Civil
R. TAMAR HAGLER
Deputy Chief
BETH PEPPER
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W
Washington, D.C. 20530
Phone:  (202) 305-0916
Fax:  (202) 514-1116
E-mail: Beth.Pepper@usdoj.gov


_____          **Date**:_____
ILA C. DEISS
Assistant United States Attorney
U.S. Department of Justice
United States Attorney's Office
Northern District of California
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Phone: (415) 436-7124
Fax:    (415) 436-7169
Email: ila.deiss@usdoj.gov


**For Defendant**
**City of Santa Rosa:**


_____          **Date**:_____
Michael J. Casey, Esq.
Assistant City Attorney
100 Santa Rosa Ave.
Santa Rosa, California 95404
(707) 543-3040
MCase@srcity.org

_____     **Date**:_____
Mayor Ernesto Olivares
100 Santa Rosa Ave.
Santa Rosa, California 95404
(707) 543-3010


**For Defendant**
**La Esplanada Unit 1**
**Owners' Association:**


_____     **Date**:_____
Steven Bleasdell, Esq.
Beyers Castin
200 Fourth Street
Santa Rosa, California 95402
(707) 547-2000
sbleasdell@beyerscostin.com


_____     **Date**:_____
Mr. James H. Robie
President of the HOA
La Esplanada Unit 1 Owners' Association
c/o A Superior Management Company
131A Stony Circle Ste. 500
Santa Rosa, CA 95401


_____     **Date**:_____
Tamara Blass
Secretary of the HOA
La Esplanada Unit 1 Owners' Association
c/o A Superior Management Company
131A Stony Circle Ste. 500
Santa Rosa, CA 95401

Index of Exhibits

Exhibit 1- Description of Phase I Property

Exhibit 2- Description of Phase II Property

Exhibit 3- HOA verification

Exhibit 4- Employee Acknowledgement

Exhibit 5- Employee Training Certificate

Exhibit 6- Release between the City and Aggrieved Persons

Exhibit 7- Release between the HOA and Aggrieved Persons

Exhibit 1- Description and Map of the Phase I Property

Exhibit 2- Description and Map of the Phase II Property

Exhibit 3

**HOA STATEMENT OF PROVIDING COPIES OF THE ORDER**

The HOA, through its authorized representative, verifies that it has provided a copy of this Order to its officers, agents, and employees, and to each current member of the HOA, that it has explained the terms of the Order and that it has provided these persons with an opportunity to ask questions.


Date:  _____

Authorized HOA representative (Print): _____


Signature: _____

Exhibit 4

**OFFICER, EMPLOYEE/AGENT ACKNOWLEDGEMENT**

I have received a copy of the Consent Order and any exhibits attached thereto entered in

*United States v. City of Santa Rosa and La Esplanada Unit 1 Owners' Association*, civil action

no. 11-5641 SBA, filed in the United States District Court for the Northern District of California,

Oakland Division.  I have read and understand these documents and have had my questions

about these documents answered.  I understand my legal responsibilities and shall comply with

those responsibilities and abide by the terms of the Consent Order.


Date:   _____

Employee/Agent Name (Print): _____


Employee/ Agent Signature: _____

Exhibit 5

**OFFICER, EMPLOYEE/AGENT CERTIFICATE OF TRAINING**


I attended an in-person training at _____ [location of training] which was provided by _____[ name of training].  The training specifically included the topic of discrimination on the basis of familial status and the requirements of the HOPA exemption.  The name of the course was _____ which I took on _____[date course taken], and the course lasted _____ [hours or days] and was completed by _____ [date of completion].


Date:  _____

Employee/Agent Name (Print): _____

Employee/ Agent Signature: _____

Exhibit 6

**FULL AND FINAL RELEASE OF CLAIMS (City of Santa Rosa)**

In consideration for the parties' agreement to the terms of the Consent Order entered into in the case of *United States v. City of Santa Rosa and La Esplanada Unit 1 Owners' Association*, as approved by the United States District Court for the Northern District of California, Oakland Division, and in consideration of the City's waiver of $12,500 of the cost and fees associated with any rezoning and/or compliance actions governing the Subject Property, the two aggrieved persons, LPV and Vladimir Abramov in his individual capacity and acting on behalf of LPV, do hereby fully release and forever discharge the City of Santa Rosa, along with its insurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders, subsidiaries, employees, former employees, heirs, executors, and administrators and any persons acting under their respective direction or control from any and all fair housing claims set forth, or which could have been set forth in the Complaint in this lawsuit that they may have had against any of them for any of City's actions or statements related to those claims through the date of the entry of the Consent Order.

Date: _____

Signature: _____
            Vladimir Abramov, Individually
Address:


Signature: _____
            Vladimir Abramov, CEO on behalf of LPV
Address:

Exhibit 7

**FULL AND FINAL RELEASE OF CLAIMS: THE HOA**

In consideration for the parties' agreement to the terms of the Consent Order entered into in the case of *United States v. City of Santa Rosa and La Esplanada Unit 1 Owners' Association*, as approved by the United States District Court for the Northern District of California, Oakland Division, and in consideration of the HOA's payment by way of a set-off in the amount of $44,000.00 in connection with any assessments, fees, and other costs that the HOA alleged it is owed in a state court case captioned, *HOA et.al. v. LPV, et.al*., SCV-251158, filed in the Superior Court of California County of Sonoma, the aggrieved persons, LPV and Vladimir Abramov in his individual capacity and acting on behalf of LPV, do hereby fully release and forever discharge the HOA, along with its insurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders, subsidiaries, employees, former employees, heirs, executors, and administrators and any persons acting under their respective direction or control from any and all federal fair housing claims set forth, or which could have been set forth in the Complaint in this lawsuit that I may have had against any of them for any of the HOA's actions or statements related to those claims through the date of the entry of the Consent Order.   LPV and Vladimir Abramov explicitly do not waive or release the HOA from state law claims unrelated to facts upon which this federal action, cv-11- 5641, was based.


Date:   _____

Signature:   _____
Address:              Vladimir Abramov, Individually


Signature:   _____
                      Vladimir Abramov, CEO on behalf of LPV

Address: